## THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT COURT OF DELAWARE

| | | |
|---|---|---|
| THERESA CROTHER, | : | Civil Action No. 04-913 (KAJ) |
| | : | |
| GEORGE GREEN, | : | TRIAL BY JURY OF |
| | : | TWELVE DEMANDED |
| GREGORY PARISE, | : | |
| | : | |
| MICHAEL WHETSTONE, | : | |
| | : | |
| v. | : | |
| TOWN OF DEWEY BEACH, | : | |
| | : | |
| SAMUEL MACKERT, | : | |
| Acting Chief | | |
| Dewey Beach Police Department | : | |
| | : | |
| PATROLMAN ZACHARY PETTYJOHN, | : | |
| Dewey Beach Police Department | | |
| | : | |
| PATROLMAN JOHN WHEATLEY, | : | |
| Dewey Beach Police Department | | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants submit this Memorandum of Points and Authorities in Support of their Motion

for Summary Judgment.

### STATEMENT OF FACTS

Plaintiff's Complaint against defendants is based upon three incidents which occurred on

July 12, 2003, August 29, 2003 and June 26, 2003.  Plaintiff's Complaint is attached as Exhibit

"A".  Defendants filed an Answer with Affirmative Defenses, denying liability.  Defendants'

Answer with Affirmative Defenses is attached as Exhibit "B".  Each incident is described below.

**A.     Theresa Crother and George Green**

Plaintiffs, Crother and Green, were stopped for violation of beach curfew at approximately 1:20 a.m. on July 12, 2003. See Crime and Arrest Report for this incident, attached as Exhibit "C". Patrolman Pettyjohn, a named defendant in this case, issued a complaint and summons and released both of them. Id. While walking away, Crother and Green began pointing in an aggressive manner and yelling at Patrolman Pettyjohn. Id. At this point, he ordered them to stop. Id. When they failed to comply, Patrolman Pettyjohn grasped Green's right arm to prevent him from walking any further. Id. Crother then struck Patrolman Pettyjohn with an open hand upon his face and squeezed his cheeks. Id. Patrolman Pettyjohn was able to obtain order, arrest Crother and Green and transport them to the police department. Id. During processing, Crother refused to be fingerprinted and have her photograph taken. Id.

Crother was charged with violation of beach curfew, assault 2nd degree and refusing authority to take fingerprint. She pled to probation before judgment on the charge of offensive touching and the remaining charges were nolle prossed. Docket, attached as Exhibit "D".

Green was issued a summons for violating beach curfew. Docket, attached as Exhibit "E". These charges were subsequently nolle prossed. Id.

**B.     Gregory Parise**

On June 28, 2003 at approximately 12:10 a.m., Patrolman Wheatley, a named defendant in this case, observed Plaintiff Parise and another man urinating behind a sign in the parking lot of the Bottle & Cork. See Crime and Arrest Reports and Complaint and Warrant for this incident, attached as Exhibit "F". Parise and the other man proceeded to walk westbound on Dagsworthy Avenue. Id. Patrolman Wheatley contacted Patrolman Pettyjohn and informed him that the two individuals were walking in his direction. Id.

- 2 -

Patrolman Pettyjohn stopped the individuals and informed them of the reasons for the stop. Id. Shortly thereafter, Patrolman Wheatley and Patrolman Hitchens arrived. Id. Parise and the other individual informed the Dewey Beach officers that they were not real police officers and that Parise and the other individual were real officers and they were not going to comply with any orders until the real police arrived. Id. When the two individuals then began to walk away, Patrolman Wheatley told them to "come here" and grabbed the other individual's waist. Id. The individual threw his elbow against Patrolman Wheatley's arm and aggressively pushed himself away. Id. Patrolman Wheatley sprayed the individual with Cap-Stun. Id. The individual then ran a short distance and took a swing at Patrolman Pettyjohn. Id. Patrolman Pettyjohn ducked and the punch struck Hitchens in the jaw rendering him unconscious. Id. The individual then put his hands up and approached Patrolman Pettyjohn. Id. Patrolman Pettyjohn sprayed the individual with Cap-Stun, but the individual then fled east down Dagsworthy Avenue. Id.

Patrolman Wheatley noticed Parise running toward him with his arms spread in a manner which caused Patrolman Wheatley to believe he was going to be tackled. Id. Patrolman Wheatley proceeded to spray Parise with Cap-Stun, but Parise also then fled east down Dagsworthy Avenue. Id.

The patrolman pursued Parise and the other individual and eventually apprehended them. Id. They were taken to Dewey Beach Police Department where they were processed. Id.

Patrolman Hitchens was transported to Beebe Medical Center where he was treated for a bruised jaw and abrasions to his lips. Id. During the incident, Plaintiff Parise and the other individual caused damage to property in the amount of $540.00. Id.

The other individual, Paul A. Lucci, Jr., pled guilty to offensive touching and disorderly conduct. Docket, attached as Exhibit "G". Charges against Parise were ultimately dismissed for failure of the witness to appear. Docket, attached as Exhibit "H".

## C.    Michael Whetstone

On August 29, 2003 at approximately 11:49 p.m., Whetstone was observed by Patrolman Pettyjohn urinating on the side of the Bottle and Cork. <u>See</u> Crime and Arrest Reports and Complaint and Warrant for this incident attached as Exhibit "I". Whetstone was approached by Patrolman Whettstone and a security guard at the Bottle and Cork. <u>Id</u>. Whetstone stated he was a member of a band that was playing at the Bottle and Cork and that he was twenty-one years of age. <u>Id</u>. He did not have any identification on him. <u>Id</u>. Patrolman Pettyjohn contacted dispatch to verify the accuracy of Whetstone's information. <u>Id</u>. Whetstone then indicated that he was only eighteen years of age. <u>Id</u>. Whetstone then put his hands behind his back and began to stumble back and forth. <u>Id</u>. At this time, Patrolman Pettyjohn, for safety reasons, thought it best to transport Whetstone to the station and call his parents. <u>Id</u>.

Upon arriving at the police station, Whetstone was handcuffed and placed into a processing room. <u>Id</u>. While Patrolman Pettyjohn was speaking to Whetstone's grandfather on the phone, Whetstone vomited. <u>Id</u>. Patrolman Pettyjohn unhandcuffed Whetstone and began to clean up the vomit. <u>Id</u>. Whetstone moved between Patrolman Pettyjohn and the door and said "Fuck you mother fucker, you better back the fuck up or I'm going to kill you bitch." <u>Id</u>. Patrolman Pettyjohn told Whetstone to sit down so he could be handcuffed. <u>Id</u>. While Patrolman Pettyjohn was putting on leather gloves, Whetstone walked toward Patrolman Pettyjohn and threw a punch at him. <u>Id</u>. Patrolman Pettyjohn exited the room.

A fellow patrolman approached.  Id.  After a brief conversation, Patrolman Pettyjohn opened the door and observed Whetstone sitting on the bench with his hands closed tightly, looking in his direction.  Id.  Fearing for his safety, Patrolman Pettyjohn sprayed a short burst with the Cap-Stun from approximately six feet away into the eyes of Whetstone.  Id.  Patrolman Pettyjohn and the other patrolman then entered the room and Whetstone was placed in handcuffs. Id.  Fellow officers then arrived and cleansed the eyes of Whetstone.  Id.

Whetstone's grandfather arrived and conversed with him.  Id.  During the conversation, Whetstone cursed erratically, banged his head against the fence several times and began accusing Patrolman Pettyjohn of punching him and beating him up in his cell.  Id.  When Whetstone's eyes were cleared and the vomit was removed, Whetstone was brought back into the processing cell. Id.  He was then taken to Justice of the Peace Court 3 for arraignment on charges of assault 2nd degree intentional injury to a law enforcement officer, disorderly conduct, urination in public and criminal impersonation another to obtain benefit or defraud.  Id.

Whetstone pled nolo contendre to disorderly conduct and was sentenced on November 3, 2003.  Docket, attached as Exhibit "J".  The remaining charges were nolle prossed.  Id.

## ARGUMENT

Disposition through summary judgment should be encouraged, where appropriate, to bring finality to litigation in an expeditious and economical manner.  Davis v. Univ. of Del., 240 A.2d 583, 584 (Del. 1968).  Summary judgment is appropriate when, viewing the evidence in a light most favorable to the non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Sweetman v. Strescon Indus., Inc., 389 A.2d 1319 (Del. Super. Ct. 1978).  Once the moving party meets its initial burden of showing that no material issues of fact are present, the non-moving party cannot rest on its own pleadings,

but must provide evidentiary material sufficient to demonstrate the existence of a disputed

material fact. Phillips v. Del. Power & Light Co., 216 A.2d 281, 285 (Del. 1966).

A.    **Plaintiffs Cannot Establish That A Municipal Custom Or Policy Was A Moving Force Behind Any Alleged Constitutional Violation.**

The Town of Dewey Beach and the individual officers[1] in their official capacities are

entitled to the entry of summary judgment in their favor. Plaintiffs cannot establish the existence

of an unconstitutional policy or custom that caused their own harm. Therefore municipal liability

cannot be established.

A municipality may be sued under 42 U.S.C. §1983 only for acts implementing an

official policy, practice or custom. Monell v. Department of Social Service, 436 U.S. 658, 690-

91 (1978). The Monell Court made clear that there can be no §1983 liability under a respondeat

superior theory. Id. at 694. See also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir.

1998). To establish municipal liability under §1983, a plaintiff must 1) identify the challenged

policy or custom, 2) attribute it to the municipality, and 3) show a casual connection between the

execution of that policy and the injuries suffered. Kranson v. Valley Crest Nursing Home, 755

F.2d 46,51 (3d Cir. 1985). A policy or custom must first be identified. In City of Oklahoma City

v. Tuttle, 105 S. Ct. 2427, 2436 (1985), Chief Justice Rehnquist, speaking for the plurality, stated

that a policy or custom is a "course of action consciously chosen from among variable

alternatives." The Third Circuit has ruled:

> A government policy or custom can be established in two ways. Policy is made when a "decision maker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

---

[1] Plaintiffs' claim against the officers in their official capacities is barred because they are not "persons" within the meaning of §1983. Wiers v. Barnes, 925 F. Supp. 1079, 1090 (D. Del. 1996) citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989).

Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990); see also Bielevicz v.

Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). After a policy or custom has been identified, it must

be attributed to the municipality. Plaintiff must provide "considerably more proof than a single

incident." Tuttle, 105 S. Ct. at 2436. In Losch v. Borough of Parkesburg, 736 F.2d 903 (3d Cir.

1984), the Court held that:

> [a] policy cannot ordinarily be inferred from a single instance of illegality such as a first
> arrest without probable cause… In this case …there is no regulation or evidence of
> repeated action by [the Police Chief} with regard to the filing of charges that can
> transmute his actions in the Losch incident into a general Borough policy

Id. at 911. In Bingham v. City of Pittsburgh, 658 F. Supp. 655 (W.D.Pa. 1987), the Court held

that: "More than a single episode of police misconduct is required to trigger an inference of a

policy." Id. at 658. The Court noted that the plaintiff had "failed to produce any evidence of prior

improper police procedure" and held that "[s]hort of production of such evidence, it cannot be

inferred that there was a policy which either encouraged or condoned improper acts carried out

by police officers". Id. at 659.

> [A]bsent a concrete official policy, like the policy in Monell, an inference of the
> existence of a policy can only be drawn from a well-established pattern .. An
> isolated episode of a police officer using excessive force will not be sufficient to
> prove a pattern. Supreme Court precedent, and the case law that has applied that
> precedent, demonstrate that more is required .

Id. at 660.

In addition to establishing a policy attributable to the Town of Dewey Beach, plaintiff

must also demonstrate a causal connection between the execution of the policy and the claimed

injury. The Supreme Court has held that the "official policy must have been the 'moving force'

behind the constitutional violation." Monell, 436 U.S. at 694. In Rizzo v. Goode, 423 U.S. 362,

371 (1976), the Court ruled that the "plaintiff must develop facts which demonstrate an

'affirmative link' between the misconduct of the individual officers and some policy, expressed

or implied, which has been adopted or authorized by the city." See also Pembaur v. City of Cincinnati, 106 S.Ct. 1292, 1299-1300 n. 11 (1986). Authority from the Third Circuit is in accord. The plaintiff must prove nexus between the policy and the infringement of constitutional rights. Talbert v. Kelly, 699 F.2d 62, 67 (3d Cir. 1986) . Evidence which allegedly supports a finding of municipal policy must predate the alleged deprivation. Bingham, supra.

In this case, the record does not establish a viable claim against the Town of Dewey Beach or the officers in their official capacities. Plaintiff has failed to identify a policy, practice or custom on the part of the municipal defendants and a causal connection between the execution of that policy, practice or custom, which violated plaintiffs' constitutional rights, and plaintiffs' alleged injury. The record set forth in detail above simply does not establish a custom, policy or practice on the part of the municipal defendant of allowing its police officers to employ excessive force vis-à-vis suspects or plaintiffs themselves. Defendants incorporate herein by reference the factual recitation set forth above in support of their argument that plaintiff has failed to identify and establish the existence of a municipal custom or policy that was a moving force behind any alleged constitutional violation.

Inadequate police training may serve as the basis for §1983 liability only where "the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378(1989). "Only where a failure to train reflects a 'deliberate or conscious' choice by a municipality ... can a city be liable for such a failure under Section 1983." Id. at 389. In Simmons v. City of Philadelphia, 947 F.2d 1042 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992), the Third Circuit held that in order to establish municipal liability on a theory of failure to properly train employees in the prevention of suicide by intoxicated detainees, the plaintiff must show that "responsible policymakers were aware of

- 8 -

the number of suicides in City lockups and of the alternatives for preventing them, but either deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard." Id. at 1064. In Bielevicz, supra, the Third Circuit held that to sustain a §1983 claim for municipal liability, the plaintiff must establish a municipal custom coupled with causation – i.e., that policy makers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury. Id. at 851.

In this case, plaintiff cannot establish a policy or custom of failure to train, discipline or control. There is no evidence in the record of similar allegedly unlawful conduct in the past.

**B.     The officers did not use excessive force upon plaintiffs and they are protected by the doctrine of qualified immunity.**

A peace officer's right to arrest or make an investigatory stop is accompanied by the right to use some degree of physical coercion or the threat of it. See Terry v. Ohio, 392 U.S. 1, 22-27 (1968). In Graham v. Connor, 490 U.S. 386 (1989), the United States Supreme Court held that claims against law enforcement officers for use of excessive under §1983 are analyzed under the Fourth Amendment's objective reasonableness standard. The test is whether the officer's actions in using force alleged to be excessive are objectionably reasonable in light of the facts and circumstances confronting the officer without regard to the officer's underlying intent or motivation. Id. at 395-97. Reasonableness is determined from the perspective of a reasonable officer on the scene, not 20/20 hindsight. Moreover, the concept of reasonableness acknowledges that police are forced to make split second judgments about the amount of force necessary in circumstances that are tense, uncertain and rapidly evolving. Id. Included in the facts and circumstances to be reviewed is whether a suspect is actively resisting arrest. Id. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance,

the officer would be justified in using more force than was in fact was needed." Saucier v. Katz, 533 U.S. 194, 205 (2001). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396. The reasonableness of a particular use of force requires deference to the judgment of reasonable officers on the scene. Id.

Qualified immunity immunizes the officers from suit in their individual capacities because "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald 457 U.S. 800, 818 (1982). A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would know that what he is doing violates that right. Saucier v. Katz 533 U.S. 194 (2001); Anderson v. Creighton, 483 U.S. 635, 640 (1987). If no reasonably competent official could conclude on an objective basis that an officer's actions were lawful, then a defendant is not immune from suit. However, if reasonable competent officials could disagree on the issue, then immunity must be recognized. In re City of Philadelphia Litig., 49 F. 3d 945, 961-62 (3d Cir. 1995). If officials of reasonable competence could disagree about whether an officer used excessive force, then qualified immunity attaches. See Samuels v. Hall, 2004 U.S. Dist. Lexis 14956 (D. Del.) (Mem. Op.) (emphasizing that four (4) arresting detectives agreed that a defendant's use of force was appropriate under the circumstances), attached as Exhibit "K". Moreover, if an officer made a reasonable mistake, he or she is still entitled to qualified immunity. Saucier, 533 U.S. at 205.

> "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those

circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense. Id. Qualified immunity in this case, then protects officers from the sometimes "hazy border between excessive and acceptable force." Priester v. Riviera Beach, 208 F. 3d 919, 926-27 (CA 11 2000)."

To the extent the plaintiffs purport to allege a right to be free from excessive force, the officers are entitled to qualified immunity. "[P]laintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." Donahue v. Gavin, 280 F. 3d 371, 378 (3d Cir. 2002) quoting Sherwood v. Mulvihill, 113 F. 3d 396, 399 (3d Cir. 1997).

Based upon the testimony set forth in detail above, reasonably competent officials could objectively conclude that the officers' use of force was lawful.

**C.    Evidence of record does not establish plaintiffs' claim of malicious prosecution against the officers.**

To sustain an action for malicious prosecution, plaintiff must prove six elements: a) prior institution of a criminal proceeding against plaintiff; b) institution of the former proceeding by or at the instance of the officers; c) termination of the former proceeding in favor of plaintiffs; d) malice by the officers in instituting the former proceeding; e) lack of probable cause for institution of the former proceeding; and f) injury or damage to plaintiff from the former proceeding. Megenhardt v. Nolan, 1990 Del. LEXIS 340, 3, attached as Exhibit "L". Issuance of a warrant by a magistrate is prima facie evidence of probable cause. Id. at 4. See Exhibit "F" (signed warrant as to Parise and Lucci) and see Exhibit "H" (signed warrant as to Whetstone). A decision to prosecute violations of Delaware law is left to the discretion of the State and, therefore, absent affirmative evidence of malice or lack of probable cause, courts will not entertain a claim for malicious prosecution. Wiers v. Barnes, 925 F. Supp. 1079, 1093 (D. Del. 1996). It is manifest from the record that plaintiffs cannot show even a hint of malice on the part

of the officers.  The charges brought against them were well supported by plaintiffs' own conduct.  See id.

11 Del. C. §4218 provides that the Court may, for certain offenses, place a defendant on probation before judgment after accepting a plea of guilty or nolo contendere. Although the charge of failure to grant authority for finger printing was nolle prossed, plaintiff Crother entered a guilty plea to the charge of resisting arrest.  She received probation before judgment on that charge and was sentenced to probation and pay court fees and fines.  Thus, the former proceeding did not terminate in plaintiff's favor.  If she argues that it did, then she cannot argue that she was injured or damaged by the proceeding in the form of payment of the fines and penalties within the period of probation and she necessarily cannot meet the last element of a malicious prosecution claim.

The charges against Plaintiff Parise were ultimately dismissed; however, his companion at the time of the incident, Paul A. Lucci, Jr., pled guilty to offensive touching and disorderly conduct.  The two were arrested at the same time under the same factual circumstances.  There exist warrants signed by a Justice of the Peace for each.

Plaintiff Whetstone pled nolo contendere to the charge of disorderly conduct.  In addition, there exists a warrant signed by a Justice of the Peace.

There was no malice in instituting the charges and that probable cause existed. Defendants incorporate herein by reference the factual recitation set forth above in support of their claim that the officers are entitled to summary judgment on plaintiff's claim of malicious prosecution.

**D.    Evidence of record does not establish plaintiffs' claim of false arrest against the officers.**

A police officer may arrest a person without a warrant if the officer has witnessed a

crime.  11 Del. C.  §1904.  Reasonable ground for an arrest exists when all the facts and circumstances within the officer's knowledge are reasonable, reliable and sufficient to allow a prudent person to conclude that the suspect has committed or is committing a crime.  Coleman v. State, 562 A. 2d 1171, 1175-77 (1989), cert. denied, 493 U.S. 1027 (1990).  Reasonable ground means probable cause.  Thompson v. State 539 A. 2d 1052 (Del. 1988).  An arresting officer has probable cause if there is a "fair probability" that the plaintiff committed the act. Wilson v. Russo 212 F. 3d 781, 790 (3d Cir. 2000).

In the instance case, the plaintiffs were observed engaged in activity that was in violation of the law.  Plaintiffs Crother and Green were loitering on the beach after hours. Plaintiffs Parise and Whetstone were observed urinating in public, Parise behind a sign in the parking lot of the Bottle & Cork and Whetstone on the side of the Bottle & Cork.  In addition, a strong odor of alcohol emanated from the breath of Plaintiff Whetstone and he was under the age of twenty-one (21).

Probable cause, which is measured by the totality of the circumstances, Coleman, supra, can clearly be found by the direct observations of the officers in each of these cases.  The fact that certain charges against plaintiff were later nolle prossed or dismissed by the State is of no consequence to the probable cause determination.  Babb v. Dorman, 33 F. 3d 472, 479 (5th Cir. 1994).  Defendants incorporate herein by reference their factual recitation set forth above in support of their contention that the evidence of record fails to establish plaintiffs' claim of false arrest against the officers.

**E.     Evidence of record does not establish plaintiffs' claim of intentional infliction of emotional distress against the officers.**

To sustain a claim for intentional infliction of emotional distress, plaintiff must establish specific conduct that is "so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "  <u>Mattern v. Hudson</u>, 532 A. 2d 85, 85-86 (Del. Super. Ct. 1987) <u>quoting</u> Restatement (Second) of Torts §46(1).  Liability only arises if the emotional distress inflicted is indeed severe.  <u>Id</u>. at 86.  Plaintiffs have not supported any such claim and have not identified any healthcare provider with whom they treated for their alleged claims of emotional distress.  As argued above, plaintiffs' arrests were based upon probable cause and no excessive force was used.  Accordingly, the officers are entitled to summary judgment on this claim.

**F.    Evidence of record does not establish plaintiffs' claim of gross negligence**

The Town of Dewey Beach can not be liable for gross and wanton negligence because it is immune from suit under 10 <u>Del</u>. <u>C</u>. §4011-13.  Local governmental entities remain immune and punitive damages may not be recovered against them even if their employee's conduct is willful and wanton.  <u>Schueler v. Martin</u> 674 A. 2d 882 (Del. Super. Ct. 1996).

The officers are not subject to liability under a theory of gross negligence because 10 <u>Del</u>. <u>C</u>. §4011(c) allows for personal liability of an employee of a governmental entity for conduct limited to "wanton negligence or willful and malicious intent", not gross negligence.  The evidence of record simply does not establish either wanton negligence or willful and malicious intent on the part of the officers.  Defendants incorporate herein by reference their recitation of facts as set forth above which plainly establishes that the officers acted in good faith based upon their beliefs under the circumstances.  Thus, the officers are immune from suit under 10 <u>Del</u>. <u>C</u>. §§4011-13.

**WHEREFORE,** the defendants respectfully move this Honorable Court to grant

summary judgment in their favor and against plaintiffs.

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

BY:   /s/ Kevin J. Connors
Kevin J. Connors, Esquire,
DE I.D. 2135
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4302
Attorney for Defendants

\15_A\LIAB\ESTHOMPSON\LLPG\336773\ESTHOMPSON\13061\00368