**EXHIBIT K**

LEXSEE 2004 U.S. DIST LEXIS 14956

**GERALD S. SAMUELS, Plaintiff, v. DETECTIVE HALL, Defendant.**

Civ. No. 03-150-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 14956*

**July 19, 2004, Decided**

**PRIOR HISTORY:** *Samuels v. Cunningham, 2003 U.S. Dist. LEXIS 14479 (D. Del., Aug. 14, 2003)*

**DISPOSITION:** [*1] Defendant's motion for summary judgment granted. Plaintiff's renewed motion for appointment of counsel denied as moot.

**COUNSEL:** Gerald S. Samuels, Plaintiff, Pro se, Georgetown, Delaware.

Rosamaria Tassone, Esquire, City of Wilmington Law Department, Wilmington, Delaware, Counsel for Defendant.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: July 19, 2004
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On January 30, 2003, Gerald Samuels, a pro se plaintiff proceeding in forma pauperis ("plaintiff"), n1 filed the present action pursuant to *42 U.S.C. § 1983*, alleging a *Fourth Amendment* violation due to use of excessive force by Detectives Robert C. Cunningham, David M. Simmons, Barry J. Mullins, Scott C. Chaffin (collectively, "the arresting detectives"), and Detective Jonathan D. Hall. n2 (D.I. 2) The Wilmington Police Department was also named as a defendant. (Id.) On August 14, 2003 and May 25, 2004, plaintiff amended his complaint to further allege that the actions of the detectives constituted the tort of assault under state law. (D.I. 31, 60) [*2]

> n1 Plaintiff is currently incarcerated at Sussex Correctional Institute in Georgetown, Delaware. (D.I. 60 at 3)
>
> n2 The detectives were all members of the Wilmington Police Department's Criminal Investigation Division at the time plaintiff's rights were allegedly violated.

Plaintiff's allegations stem from an incident that occurred on November 21, 2001, when the arresting detectives attempted to take plaintiff into custody for selling narcotics. (D.I. 60 at 2) Plaintiff admits that he repeatedly tried to escape, struggling against all four of the arresting detectives. (Id.) Plaintiff claims that he stopped struggling after a few minutes and allowed the arresting detectives to put him in handcuffs. Plaintiff asserts that Detective Hall ran up to him after he was handcuffed and "violently" punched him in his exposed rib cage, causing him to collapse. (Id.) Plaintiff claims that, by hitting him while he was handcuffed and cooperative, Detective Hall used excessive force in violation of the *Fourth Amendment* [*3] and the laws of the State of Delaware. (Id. at 3)

On August 14, 2003, the court granted the defendants' motion to dismiss as to the Wilmington Police Department and the arresting detectives, leaving Detective Hall ("defendant") as the sole remaining defendant. (D.I. 16, 27) The court has jurisdiction over plaintiff's § *1983* claim pursuant to *42 U.S.C. § 1331*. The court also has supplemental jurisdiction over plaintiff's state law tort claim pursuant to *28 U.S.C. § 1367*. Presently before the court are defendant's motion for summary judgment and plaintiff's renewed motion for appointment of counsel. n3 (D.I. 50, 55) For the reasons that follow, the court

grants defendant's motion for summary judgment and denies plaintiff's motion for appointment of counsel.

n3 Plaintiff's original motion for appointment of counsel was denied on August 14, 2003. (D.I. 6, 27)

## II. BACKGROUND

On November 21, 2001, the arresting detectives were returning to the police [*4] station in a police vehicle when Detective Cunningham ("Cunningham") announced that he had just witnessed plaintiff engaging in what appeared to be a drug transaction. (D.I. 52 at A-104) Cunningham asked the driver of the vehicle to stop so that he could investigate the incident. (Id. at A-105) Upon seeing the approach of the vehicle in which the arresting detectives were riding, plaintiff abruptly turned around and began walking away. (Id.) Cunningham and Detective Simmons ("Simmons") exited the car and called out to plaintiff. (Id.) Plaintiff subsequently turned and began walking toward Cunningham and Simmons. (Id.) Simmons noticed that plaintiff was cradling drugs between the palm of his hand and the lid of a coffee cup that he was holding. (Id. at A-114) Simmons ordered plaintiff to place his hands behind his back. (Id.) He grabbed plaintiff's wrist to prevent plaintiff from throwing hot coffee at him. (Id.) At that point, plaintiff pulled away from Simmons and began to run. (Id. at A-105) Cunningham grabbed the back of plaintiff's hooded sweatshirt and was dragged for a short distance until Simmons was also able to grab hold of plaintiff. (Id. [*5] ) Upon viewing plaintiff's attempt to escape, Detectives Mullins ("Mullins") and Chaffin ("Chaffin") exited the parked police vehicle to assist their fellow detectives. (Id.) Defendant, who was riding by the scene of the incident in a police vehicle driven by Detective Andrew C. Brock, observed plaintiff's struggle with the arresting detectives and exited the vehicle to aid his fellow detectives in the arrest. (Id. at A-107-A-108) Defendant approached plaintiff, whom he claims was not yet handcuffed, and "struck him once with a closed fist in the upper right side of his rib area and once in his left thigh." (Id. at A-108) The arresting officers were then able to take plaintiff into custody without any further struggle. (Id.) Later that day, Simmons and Chaffin took plaintiff to Wilmington Hospital (id. at A-103), where he was diagnosed with a fractured rib. (Id. at A-14) As a result of the incident that occurred on November 21, 2001, plaintiff pleaded guilty to charges of possession of a schedule I narcotic within 1000 feet of a school and resisting arrest. n4 (Id. at A-30)

n4 The state declined to prosecute possession with intent to deliver a schedule I narcotic and criminal impersonation charges against plaintiff. (D.I. 52 at A-30)

[*6]

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)* (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita, 475 U.S. at 587* (quoting [*7] *Fed. R. Civ. P. 56(e)*). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995)*. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

## IV. DISCUSSION

### A. The Parties' Contentions

Plaintiff alleges that he was handcuffed and compliant with the arresting detectives when defendant struck him, making defendant's blow a use of excessive force in violation of plaintiff's *Fourth Amendment* rights [*8] and Delaware state law. (D.I. 60 at 2-3) Defendant, in

Case 1:04-cv-00913-GMS    Document 42-12    Filed 03/01/2006    Page 4 of 6

Page 3
2004 U.S. Dist. LEXIS 14956, *

rebuttal, contends that plaintiff was not handcuffed and was still vigorously resisting arrest when defendant struck him. Defendant claims that the force he used "in effecting plaintiff's arrest was objectively reasonable in light of the totality of the circumstances." (D.I. 50 at P1) Defendant also argues that he is immune from suit under both the doctrine of qualified immunity and the *Delaware County and Municipal Tort Claims Act* ("State Tort Claims Act"). (Id. at PP2, 4)

### B. Plaintiff's *Fourth Amendment* and Assault Claims

As plaintiff alleges a claim predicated upon the use of excessive force during his arrest, his claim must be analyzed under *Fourth Amendment* reasonableness standards. *Graham v. Connor, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)*. The *Fourth Amendment's* reasonableness standard is "'not capable of precise definition or mechanical application.'" *Id. at 396* (quoting *Bell v. Wolfish, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979))*. The reasonableness test requires careful analysis of the "facts and circumstances of each particular case, including . . . whether [*9] the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner, 471 U.S. 1, 8-9, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985))*. Police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior. Id. The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing *Terry v. Ohio, 392 U.S. 1, 20-22, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968))*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id. at 396-397*. The question to be answered is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them [at that particular moment, regardless of] their underlying intent or motivation." *Id.* [*10] *at 397* (citing *Scott v. United States, 436 U.S. 128, 137-139, 56 L. Ed. 2d 168, 98 S. Ct. 1717 (1978); Terry, 392 U.S. at 21)*. "An officer's evil intentions will not make a *Fourth Amendment* violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. (citing *Scott, 436 U.S. at 138* (citing *United States v. Robinson, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973)))*.

Viewing the facts and all reasonable inferences in a light most favorable to plaintiff, the court finds that there are no genuine issues of material fact concerning the reasonableness of defendant's use of force. Though plaintiff's account of his altercation with the police differs from the rendition of events given by the detectives involved, the record reflects no evidence that plaintiff was handcuffed and compliant when defendant struck him in his rib area. In response to an interrogatory posed by defendant, plaintiff stated that he had an eye-witness to the event, Mamie Baynard ("Baynard"), who could confirm whether plaintiff was handcuffed when defendant hit him. (D.I. [*11] 52 at A-44) During her deposition, however, Baynard could hardly remember anything about the incident, including the date, month, time of day, or even the season in which the altercation occurred. (Id. at A-64) Although Baynard stated that it had been two years since the incident occurred, she added that she only knew that "because someone had said it was two years ago." (Id. at A-63-A-64) Likewise, Baynard was unable to recall how many detectives were present at the scene, what those detectives looked like, what plaintiff did when the detectives exited their car, how long the incident lasted, where she was going at the time, what she did after leaving the vicinity, or whether she was present for the entire altercation. (Id. at A-67-A-71) In fact, the only things Baynard did "remember" conflicted with the version of events that plaintiff set forth in his complaint. While plaintiff alleged that defendant hit him once in the ribs and once in the leg as he was being lifted off of the hood of the police car, Baynard stated that "what made [her] remember this whole situation after two years was the fact that [the detectives] were . . . beating [plaintiff] or doing something, [*12] kicking, beating, whatever, and [she] remember[s] saying, 'Well, they already have him down, they don't have to do all that to him.'" (Id. at A-67) In addition, Baynard stated that plaintiff was on the ground with the officers standing above him (id. at A-69), and said that she did not remember plaintiff being on the hood of a car. (Id. at A-73) Plaintiff's complaint made no mention of him being on the ground at all, let alone the idea that the arresting detectives kicked or beat him while he was down. Although plaintiff stated that Baynard's testimony would "reflect whether the plaintiff was [handcuffed] when he was struck" (id. at A-49), when specifically asked whether plaintiff was handcuffed during the incident, Baynard replied that she did not remember. (Id. at A-69)

In contrast, defendant and all four of the arresting detectives signed affidavits stating that plaintiff was not handcuffed and was actively resisting arrest when defendant struck him, despite repeated verbal orders to stop struggling and place his hands behind his back. (Id. at A-102-A-103, A-105-A-106, A-108, A-111-A-112, A-114-A-115). In addition, Detective Andrew C. Brock, the driver [*13] of the police car in which defendant was riding, stated that when defendant exited the car to assist

Case 1:04-cv-00913-GMS    Document 42-12    Filed 03/01/2006    Page 5 of 6

Page 4
2004 U.S. Dist. LEXIS 14956, *

the arresting detectives, plaintiff was not handcuffed and continued to resist arrest. (Id. at A-100) The affidavits of the arresting detectives also state that defendant's actions "enabled [them] to safely handcuff plaintiff." (Id. at A-103, A-106, A-112, A-115). According to defendant,

> the actions [he] undertook to assist the other officers in arresting plaintiff complied with the use of force continuum as stated in the Wilmington Police Manual. n5 [He] did not employ any departmentally issued equipment against plaintiff. [His] actions were limited only to that force [he] reasonably believed necessary to sufficiently bring plaintiff under control and safely handcuff him in light of plaintiff's strenuous physical resistance to the officers' attempts to subdue him.

(Id. at A-108-A-109) Based upon this evidence, the record overwhelmingly supports defendant's assertion that plaintiff was not handcuffed and was vigorously resisting arrest when defendant struck him. As such, the court concludes that defendant's use of force, which quickly and safely [*14] allowed the arresting detectives to handcuff plaintiff, was "objectively reasonable" under the circumstances and did not violate plaintiff's *Fourth Amendment* rights or state law. Consequently, the court grants defendant's motion for summary judgment as to both plaintiff's *Fourth Amendment* and assault claims.

> n5 The continuum set forth in "Use of Force/Departmental Weapons Directive 6.7" reads as follows:
>
>> The use of force should follow a prescribed continuum: physical presence, verbal warning, verbal command, hands-on control, hands-on counter measures, intermediate weapon (which includes the choice of a chemical weapon, black jack, baton), and finally, if necessary, the use of deadly force. However, members should be mindful that the force needed to control an incident may not fall on the prescribed continuum sequentially in all circumstances. Therefore, members should use their discretion to quickly and safely apply the necessary level of force to meet situations involving arrest, safety of citizens or officer self-defense.
>
> (D.I. 52 at A-1)

[*15]

### C. Defendant's Immunity Defenses

Even if plaintiff could show a genuine issue of material fact as to the reasonableness of defendant's use of force, there are no genuine issues of material fact concerning defendant's immunity from suit under either the doctrine of qualified immunity or the State Tort Claims Act. Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)*. A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)*; accord *In re City of Philadelphia Litig., 49 F.3d 945, 961 (3d Cir. 1995)*.

When analyzing a qualified immunity defense, the court must first ascertain "whether plaintiff has [alleged] a violation of a constitutional right at all. [*16] " *Larsen v. Senate of the Commonwealth of Pa., 154 F.3d 82, 86 (3d Cir. 1998)* (citing *Siegert v. Gilley, 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991))*. Next, the court must inquire whether the right was "'clearly established' at the time the defendants acted." *Acierno v. Cloutier, 40 F.3d 597, 606 (3d Cir. 1994)* (quoting *Siegert, 500 U.S. at 232*). Finally, the court must determine "'whether a reasonable person in the official's position would have known that his conduct would violate that right.'" *Open Inns, Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp.2d 410, 419 (E.D. Pa. 1998)* (quoting *Wildinson v. Bensalem Township, 822 F. Supp. 1154, 1157 (E.D. Pa. 1993)* (citation omitted)). If no reasonably competent official could conclude on an objective basis that the official's actions were lawful, then a defendant is not immune from suit. However, "'if [officials] of reasonable competence could disagree on this issue, immunity should be recognized.'" *In re City of Philadelphia Litig., 49 F.3d at 961-62* (quoting *Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986))*. [*17]

In the case at bar, the first two criteria for availing a qualified immunity defense are satisfied. The court thus

focuses its analysis on the third criteria, to wit, whether reasonably competent officials could objectively conclude that defendant's use of force was lawful. The court finds that officials of reasonable competence could disagree about whether defendant used excessive force during plaintiff's arrest. In fact, the four arresting detectives agreed that defendant's use of force was **appropriate** under the circumstances. As a result, the court finds that defendant is protected from liability for his use of force against plaintiff under the doctrine of qualified immunity.

Under the State Tort Claims Act, governmental entities and their employees are immune from suit for tort claims resulting from "the performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute . . . under which the discretionary function or duty is performed is valid or invalid." *10 Del. C. § 4011(b)(3)*. However, "an employee may be personally liable for acts or omissions causing . . . bodily injury . . . for [*18] those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent." Id. at *§ 4011(c)*. When he struck plaintiff, defendant was acting within the scope of his employment. Likewise, the record reflects no evidence that defendant acted with "wanton negligence" or "willful and malicious intent." In addition, none of the exceptions to immunity listed in *10 Del. C. § 4012* apply to the case at bar. n6 Therefore, the court finds that defendant is entitled to immunity under the State Tort Claims Act. Accordingly, the court grants defendant's motion for summary judgment. n7

> n6 Under *10 Del. C. § 4012,* a government entity is liable for its negligent acts or omissions which cause property damage, bodily injury, or death
>
> (1) in its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, . . .
>
> (2) in the construction, operation or maintenance of any public building or the appurtenances thereto . . . [or]
>
> (3) in the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

[*19]

> n7 In light of the court's decision to grant defendant's motion for summary judgment, plaintiff's renewed motion for appointment of counsel is denied as moot.

## V. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted. Plaintiff's renewed motion for appointment of counsel is denied as moot. An appropriate order shall issue.

### ORDER

At Wilmington, this 19th day of July, 2004, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Plaintiff's motion for appointment of counsel (D.I. 55) is denied.

2. Defendant's motion for summary judgment (D.I. 50) is granted.

3. The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendant.

Sue L. Robinson

United States District Judge